**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THEODORE ZWICKER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ABILITY INC., ANATOLY HURGIN, and AVI LEVIN,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Theodore Zwicker ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ability Inc. ("Ability" or the "Company")—formerly Cambridge Capital Acquisition Corporation ("Cambridge"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ability; and (c) review of other publicly available information concerning Ability.

**NATURE OF THE ACTION AND OVERVIEW**

1. This is a class action on behalf of a class, consisting of all persons or entities who purchased or otherwise acquired Ability and/or Cambridge securities between September 8, 2015 and April 29, 2016, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

2. Ability is a holding company that operates through its wholly-owned subsidiaries Ability Computer & Software Industries, Ltd., and Ability Security Systems Ltd., which provide advanced interception, geolocation and cyber intelligence tools to serve the needs of security and intelligence agencies, military forces, law enforcement agencies, and homeland security agencies worldwide.

3. Ability was created through an acquisition and reorganization involving a "special purpose acquisition company" (or "SPAC"). A SPAC is a publically traded buyout company that raises money in order to acquire a target private company, thus essentially turning the private company into a publically traded company. Here, according to the prospectus filed by

Ability on December 2, 2015, Cambridge, the SPAC, acquired Ability Computer & Software Industries Ltd. ("Ability Ltd."), and then Cambridge changed its name to "Ability Inc."

4. On September 8, 2015, Ability Computers & Software Industries Ltd. and Cambridge Capital Acquisition Corporation jointly issued a press release announcing the acquisition entitled "CAMBRIDGE CAPITAL ACQUISITION CORPORATION TO MERGE WITH ABILITY COMPUTERS & SOFTWARE INDUSTRIES LTD." Therein, the entities touted Ability Ltd.'s revenues, stating: "Ability's revenues for the six months ended June 30, 2015 rose 162% to $43.0 million from $16.4 million for the comparable period in 2014. During this same period, net income rose at a faster rate, up 394% to $16.8 million from $3.4 million. Ability's LTM June 30, 2015 revenue and net income were $48.7 million and $17.0 million, respectively."

5. On December 23, 2015, Cambridge Capital Acquisition Corporation announced the Completion of the acquisition and the creation of Ability Inc. in a press release entitled "CAMBRIDGE CAPITAL ACQUISITION CORPORATION COMPLETES BUSINESS COMBINATION WITH ABILITY COMPUTER & SOFTWARE INDUSTRIES LTD." Therein, Cambridge Capital Acquisition Corporation stated:

> **New York, NY and Tel Aviv, Israel – December 23, 2015 – Cambridge Capital Acquisition Corporation (NASDAQ: CAMB; CAMBW; CAMBU)** ("Cambridge") today announced the closing of its business combination with privately-held Ability Computer & Software Industries Ltd. ("Ability") following the receipt of stockholder approval at Cambridge's special meeting of stockholders held today in New York City.
>
> As part of the business combination, Cambridge merged with and into Cambridge Holdco Corp., Cambridge's wholly-owned subsidiary, and changed its name to "Ability Inc."
>
> Cambridge anticipates that effective with the commencement of trading on or about December 24, 2015, Ability's ordinary shares and warrants will begin trading on the NASDAQ Capital Market under the new symbols ABIL and

ABILW, respectively. Cambridge's units will no longer trade.

6. However, on May 2, 2016, Ability filed its Annual Report with the SEC on Form 20-F. Therein, the Company disclosed that its consolidated financial statements as of December 31, 2014 and for the two years in the period then ended "have been restated to reflect correction of errors with respect to previously unrecognized commissions due to a vendor on revenues that were recognized in 2014, 2013 and 2012; improper allocation and timing of revenue recognition from connection to supportive infrastructure in multiple element sale transactions recognized in 2014, 2013 and 2012; and previously unrecognized commissions due to a third party on cost of revenues that were recognized in 2014." The restatement included unfavorable adjustments to the Company's revenues, gross profit, and operating income.

7. On this news, Ability's stock price fell $2.42 per share, or 33%, to close at $4.90 on May 2, 2016, on unusually heavy trading volume.

8. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company improperly accounted for vendor commissions in violation of Generally Accepted Accounting Principles ("GAAP"); (2) that, as such, the Company improperly accounted for expenses and liabilities in violation of GAAP; (3) that the Company improperly accounted for revenue in violation of GAAP; (4) that the Company disseminated inaccurate financial statements relating to fiscal years 2012 – 2015; (5) that the Company lacked adequate internal controls over financial reporting; and (6) that, as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about Ability's business, operations, and prospects, were false and misleading and/or lacked a

reasonable basis.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b), 20(a), and 14(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a), and 78n(a)), and Rules 10b-5 and 14a-9 promulgated thereunder (17 C.F.R. § 240.10b-5 and 17 C.F.R. § 240.14a-9).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's shares are actively traded within this Judicial District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14. Plaintiff Theodore Zwicker, as set forth in the accompanying certification, incorporated by reference herein, purchased Ability ordinary shares during the Class Period, and

suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15. Defendant Ability is a Cayman Islands corporation with its principal executive offices located at Yad Harutzim 14, Tel Aviv, Israel, 6770007.

16. Defendant Anatoly Hurgin ("Hurgin") was, at all relevant times, Chief Executive Officer ("CEO") of Ability Computers & Software Industries Ltd. prior to the merger, and CEO of Ability Inc. after the merger.

17. Defendant Avi Levin ("Levin") was, at all relevant times, the CFO of Ability Computers & Software Industries Ltd. prior to the merger, and CFO of Ability Inc. after the merger.

18. Defendants Hurgin and Levin are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Ability's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Ability is a holding company that operates through its wholly-owned subsidiaries Ability Computer & Software Industries, Ltd., and Ability Security Systems Ltd., which provide advanced interception, geolocation and cyber intelligence tools to serve the needs of security and intelligence agencies, military forces, law enforcement agencies, and homeland security agencies worldwide.

### Materially False and Misleading Statements Issued During the Class Period

20. On September 8, 2015, Ability Ltd. and Cambridge Capital Acquisition Corporation jointly issued a press release announcing the aquisition entitled "CAMBRIDGE CAPITAL ACQUISITION CORPORATION TO MERGE WITH ABILITY COMPUTERS & SOFTWARE INDUSTRIES LTD." Therein, the entities touted Ability Computers & Software Industries Ltd.'s revenues, stating: "Ability's revenues for the six months ended June 30, 2015 rose 162% to $43.0 million from $16.4 million for the comparable period in 2014. During this same period, net income rose at a faster rate, up 394% to $16.8 million from $3.4 million. Ability's LTM June 30, 2015 revenue and net income were $48.7 million and $17.0 million, respectively."

21. On December 2, 2015, Ability/Cambridge filed a combined prospectus and proxy statement (the "Proxy/Prospectus") with the SEC relating to the merger. The Proxy/Prospectus invited Cambridge investors to solicit proxies to vote to approve the merger at a special meeting to be held on December 22, 2015. The record date for the special meeting was November 24, 2015. The Proxy/Prospectus also laid out certain financial data relating to the entities to be merged, including the following Ability Computers & Software Industries Ltd. income statement and balance sheet:

**Statement of Income Data:**

| | For the nine months ended September 30, 2015 | For the nine months ended September 30, 2014 | For the year ended December 31, 2014 | For the year ended December 31, 2013 |
|---|---|---|---|---|
| | (unaudited) | | | |
| Revenues | $51,689 | $20,680 | $22,134 | $5,588 |
| Cost of revenues | 27,609 | 12,797 | 14,654 | 4,455 |
| Gross profit | 24,080 | 7,883 | 7,480 | 1,133 |
| Sales and marketing expenses | 2,420 | 2,323 | 2,387 | 665 |
| General and administrative expenses | 1,058 | 302 | 469 | 419 |
| Operating income | 20,602 | 5,258 | 4,624 | 49 |
| Finance expenses (income), net | 42 | (75) | (269) | 371 |
| Income (loss) before income taxes | 20,560 | 5,333 | 4,893 | (322) |
| Income taxes expenses (benefit) | 3,277 | 1,357 | 1,260 | (53) |
| Net and comprehensive income (loss) | 17,283 | 3,976 | 3,633 | (269) |

**Balance Sheet Data:**

| | As of September 30, 2015 | As of December 31, 2014 |
|---|---|---|
| | (unaudited) | |
| Cash | $ 16,011 | $ 10,794 |
| Total Current Assets | 26,520 | 13,698 |
| Total Assets | 27,470 | 14,455 |
| Total Current Liabilities | 13,545 | 11,720 |
| Total Non-Current Liabilities | 415 | 257 |
| Total Liabilities | 13,960 | 11,977 |
| Total Shareholders' Equity | 13,510 | 2,478 |

22. On December 23, 2015, Cambridge Capital Acquisition Corporation announced the Completion of the acquisition and the creation of Ability Inc. in a press release entitled "CAMBRIDGE CAPITAL ACQUISITION CORPORATION COMPLETES BUSINESS COMBINATION WITH ABILITY COMPUTER & SOFTWARE INDUSTRIES LTD." Therein, Cambridge Capital Acquisition Corporation stated:

> **New York, NY and Tel Aviv, Israel – December 23, 2015 – Cambridge Capital Acquisition Corporation (NASDAQ: CAMB; CAMBW; CAMBU)** ("Cambridge") today announced the closing of its business combination with privately-held Ability Computer & Software Industries Ltd. ("Ability") following the receipt of stockholder approval at Cambridge's special meeting of stockholders held today in New York City.
>
> As part of the business combination, Cambridge merged with and into Cambridge Holdco Corp., Cambridge's wholly-owned subsidiary, and changed its name to

> "Ability Inc."
>
> Cambridge anticipates that effective with the commencement of trading on or about December 24, 2015, Ability's ordinary shares and warrants will begin trading on the NASDAQ Capital Market under the new symbols ABIL and ABILW, respectively. Cambridge's units will no longer trade.

23. The above statements contained in ¶¶ 20–23 were false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that the Company improperly accounted for vendor commissions in violation of Generally Accepted Accounting Principles ("GAAP"); (2) that, as such, the Company improperly accounted for expenses and liabilities in violation of GAAP; (3) that the Company improperly accounted for revenue in violation of GAAP; (4) that the Company disseminated inaccurate financial statements relating to fiscal years 2012 – 2015; (5) that the Company lacked adequate internal controls over financial reporting; and (6) that, as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about Ability's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**<u>Disclosures at the End of the Class Period</u>**

24. On May 2, 2016, Ability filed its Annual Report with the SEC on Form 20-F. Therein, the Company disclosed that its consolidated financial statements as of December 31, 2014 and for the two years in the period then ended "have been restated to reflect correction of errors with respect to previously unrecognized commissions due to a vendor on revenues that were recognized in 2014, 2013 and 2012; improper allocation and timing of revenue recognition from connection to supportive infrastructure in multiple element sale transactions recognized in 2014, 2013 and 2012; and previously unrecognized commissions due to a third party on cost of revenues that were recognized in 2014." The restatement included unfavorable adjustments to

the Company's revenues, gross profit, and operating income.

25. On this news, Ability's stock price fell $2.42 per share, or 33%, to close at $4.90 on May 2, 2016, on unusually heavy trading volume.

**ABILITY'S VIOLATION OF GAAP RULES IN ITS FINANCIAL STATEMENTS FILED WITH THE SEC**

26. These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper recording of revenue, expenses, and liabilities in violation of GAAP rules.

27. GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

28. The fact that Ability announced that it intends to restate certain of its financial statements, and informed investors that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No.20, 7-13; SFAS No. 154, 25).

29. Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a) The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

(b) The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

(c) The principle that "financial reporting should provide information about the economic resources of Ability, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

(d) The principle that "financial reporting should provide information about Ability's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

(e) The principle that "financial reporting should provide information about how management of Ability has discharged its stewardship responsibility to owners (stockholders) for the use of Ability resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

(f) The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g) The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h) The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

30. The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons or entities who purchased or otherwise acquired Ability and/or Cambridge securities between September 8, 2015 and April 29, 2016, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ability's securities were actively traded on the NASDAQ Stock Market (the "NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Ability shares were traded publicly during the Class Period on the NASDAQ. As of December 31, 2015, Ability had 25,756,142 ordinary shares outstanding. Record owners and other members of the Class may be identified from records maintained by Ability or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ability; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37. The market for Ability's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures

to disclose, Ability's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Ability's securities relying upon the integrity of the market price of the Company's securities and market information relating to Ability, and have been damaged thereby.

38. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Ability's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Ability's business, operations, and prospects as alleged herein.

39. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ability's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

40. Defendants' wrongful conduct, as alleged herein, directly and proximately caused

the economic loss suffered by Plaintiff and the Class.

41. During the Class Period, Plaintiff and the Class purchased Ability's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42. As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Ability, his/her control over, and/or receipt and/or modification of Ability's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ability, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

43. The market for Ability's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Ability's securities traded at artificially inflated prices during the Class Period. On January 4, 2016 the Company's stock closed at a Class Period high of $10.16 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities

relying upon the integrity of the market price of Ability's securities and market information relating to Ability, and have been damaged thereby.

44. During the Class Period, the artificial inflation of Ability's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ability's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Ability and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45. At all relevant times, the market for Ability's securities was an efficient market for the following reasons, among others:

(a) Ability stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Ability filed periodic public reports with the SEC and/or the NASDAQ;

(c) Ability regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

and/or

(d) Ability was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46. As a result of the foregoing, the market for Ability's securities promptly digested current information regarding Ability from all publicly available sources and reflected such information in Ability's stock price. Under these circumstances, all purchasers of Ability's securities during the Class Period suffered similar injury through their purchase of Ability's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

47. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive

officer of Ability who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

48. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ability's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ability's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ability's financial well-being and prospects, as specified herein.

52. These defendants employed devices, schemes and artifices to defraud, while in

possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ability's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ability and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

53. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

54. The Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed

to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ability's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Ability's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Ability's securities during the Class Period at artificially high prices and were damaged thereby.

56. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ability was experiencing, which were not disclosed by Defendants, Plaintiff and other

members of the Class would not have purchased or otherwise acquired their Ability securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

59. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60. The Individual Defendants acted as controlling persons of Ability within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62. As set forth above, Ability and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 25, 2016

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff*

**SWORN CERTIFICATION OF PLAINTIFF**

**ABILITY INC. SECURITIES LITIGATION**

I, Theodore Zwicker, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase **ABILITY INC.**, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in **ABILITY INC.** during the Class Period set forth in the Complaint are as follows:

   (See Attached Transactions)

5. I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

DocuSigned by:
Theodore Zwicker
6A49B27188AE499...

7/25/2016

Date

Theodore Zwicker

**Theodore Zwicker's Transactions in Ability, Inc. (ABIWF)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 12/22/2015 [1] | Bought | 300 | $0.7098 |
| 12/22/2015 [1] | Bought | 400 | $0.7089 |
| 12/22/2015 [1] | Bought | 100 | $0.7009 |
| 12/22/2015 [1] | Bought | 200 | $0.6649 |
| 12/22/2015 [1] | Bought | 500 | $0.7885 |
| 12/23/2015 [1] | Bought | 500 | $0.7800 |
| 12/24/2015 | Bought | 260 | $0.7500 |
| 12/24/2015 | Bought | 100 | $0.7499 |
| 12/24/2015 | Bought | 100 | $0.7400 |
| 12/24/2015 | Bought | 1,540 | $0.7474 |
| 12/24/2015 | Bought | 2,000 | $0.8280 |
| 12/24/2015 | Bought | 500 | $0.7475 |
| 12/28/2015 | Bought | 500 | $0.7999 |
| 12/28/2015 | Bought | 400 | $0.7999 |
| 12/28/2015 | Bought | 100 | $0.7980 |
| 12/28/2015 | Bought | 500 | $0.7999 |
| 12/28/2015 | Bought | 1,000 | $0.8300 |
| 12/28/2015 | Bought | 900 | $0.8390 |
| 12/28/2015 | Bought | 100 | $0.8360 |
| 12/30/2015 | Bought | 6,000 | $0.9892 |
| 12/31/2015 | Bought | 6,000 | $1.0999 |
| 12/31/2015 | Bought | 1,000 | $1.0952 |
| 12/31/2015 | Bought | 4,500 | $1.0999 |
| 12/31/2015 | Bought | 500 | $1.1588 |
| 12/31/2015 | Bought | 2,000 | $1.1999 |
| 12/31/2015 | Bought | 600 | $1.1990 |
| 12/31/2015 | Bought | 200 | $1.1965 |
| 12/31/2015 | Bought | 200 | $1.1999 |
| 12/31/2015 | Bought | 200 | $1.1965 |
| 12/31/2015 | Bought | 100 | $1.1950 |
| 12/31/2015 | Bought | 1,700 | $1.1999 |
| 12/31/2015 | Bought | 300 | $1.3390 |
| 12/31/2015 | Bought | 200 | $1.3260 |
| 12/31/2015 | Bought | 200 | $1.3200 |
| 12/31/2015 | Bought | 100 | $1.3199 |
| 01/04/2016 | Bought | 1,200 | $1.3000 |
| 01/04/2016 | Bought | 3,000 | $1.3802 |
| 01/04/2016 | Bought | 900 | $1.3999 |

| | | | |
|---|---|---|---|
| 01/04/2016 | Bought | 1,100 | $1.3000 |
| 01/04/2016 | Bought | 1,000 | $1.2999 |
| 01/04/2016 | Bought | 300 | $1.3250 |
| 01/04/2016 | Bought | 4,700 | $1.3000 |
| 01/04/2016 | Bought | 1,600 | $1.4690 |
| 01/04/2016 | Bought | 400 | $1.3000 |
| 01/04/2016 | Bought | 100 | $1.4475 |
| 01/04/2016 | Bought | 800 | $1.4400 |
| 01/04/2016 | Bought | 800 | $1.4300 |
| 01/04/2016 | Bought | 2,355 | $1.4500 |
| 01/04/2016 | Bought | 7,845 | $1.4400 |
| 01/04/2016 | Bought | 100 | $1.4455 |
| 01/11/2016 | Bought | 1,000 | $1.3785 |
| 01/11/2016 | Bought | 1,500 | $1.3900 |
| 01/27/2016 | Bought | 1,400 | $1.2499 |
| 02/05/2016 | Bought | 100 | $0.8999 |
| 02/16/2016 | Bought | 400 | $0.6799 |
| 02/16/2016 | Bought | 100 | $0.6772 |

[1] Purchased prior to company name change. Ticker was CAMBW

**Theodore Zwicker's Transactions in Ability, Inc. (ABIL)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 12/22/2015[1] | Bought | 500 | $10.1499 |
| 12/24/2015 | Bought | 300 | $9.1568 |
| 12/24/2015 | Bought | 200 | $9.0850 |
| 12/24/2015 | Bought | 100 | $9.0690 |
| 12/24/2015 | Bought | 200 | $9.0685 |
| 12/28/2015 | Bought | 200 | $9.2600 |
| 12/31/2015 | Sold | -500 | $9.3675 |
| 12/31/2015 | Bought | 250 | $9.8999 |
| 12/31/2015 | Bought | 100 | $9.8999 |
| 12/31/2015 | Bought | 50 | $9.8900 |
| 01/04/2016 | Bought | 600 | $10.1665 |
| 01/04/2016 | Bought | 400 | $10.3300 |
| 01/11/2016 | Sold | -100 | $9.7360 |
| 01/11/2016 | Sold | -200 | $9.7405 |
| 01/13/2016 | Sold | -100 | $9.6444 |
| 01/14/2016 | Sold | -100 | $9.4200 |
| 01/20/2016 | Bought | 100 | $8.9500 |
| 01/20/2016 | Bought | 100 | $8.9750 |
| 01/21/2016 | Bought | 100 | $9.1005 |
| 01/21/2016 | Bought | 100 | $9.2140 |
| 01/26/2016 | Bought | 200 | $9.1105 |
| 01/29/2016 | Sold | -200 | $8.6680 |
| 01/29/2016 | Sold | -100 | $8.5100 |
| 02/01/2016 | Sold | -300 | $7.8300 |
| 02/01/2016 | Sold | -300 | $7.7300 |
| 02/16/2016 | Bought | 100 | $6.7300 |
| 02/19/2016 | Sold | -100 | $7.1920 |
| 02/22/2016 | Sold | -50 | $7.1900 |
| 02/25/2016 | Sold | -50 | $7.1768 |
| 03/01/2016 | Sold | -200 | $7.1100 |
| 03/04/2016 | Sold | -100 | $6.7100 |
| 03/07/2016 | Sold | -100 | $6.6034 |
| 03/07/2016 | Sold | -300 | $6.5887 |
| 03/07/2016 | Sold | -50 | $6.5892 |
| 03/08/2016 | Sold | -50 | $6.8441 |
| 03/11/2016 | Sold | -300 | $6.4535 |
| 03/16/2016 | Sold | -200 | $6.1800 |

[1] Purchased prior to company name change. Ticker was CAMB